UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHRISTIAN W.,[1]

Plaintiff,

DECISION AND ORDER

-vs-

1:24-CV-00461-MAV

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

## INTRODUCTION

On May 13, 2024, Christian W. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of the United States Social Security Administration's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB"). ECF No. 1. Plaintiff moved for judgment on the pleadings pursuant to Rule 12(c), ECF No. 8, and the Commissioner cross-moved for judgment on the pleadings, ECF No. 12.

For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 8] is granted, and the Commissioner's motion for judgment on the pleadings [ECF No. 12] is denied.

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

directly on the resolution of the motions presently before the Court.

## I. Plaintiff's Application

Plaintiff filed his application for DIB on July 14, 2021. Administrative Record ("AR") at 151–152.[2] He alleged a disability onset date of January 15, 2021. AR at 152. The Social Security Administration ("SSA") denied his DIB claim on November 9, 2021 and denied on reconsideration on March 30, 2022. AR at 161, 178.

## II. Plaintiff's Hearing Before the ALJ

After the Commissioner denied his application at the initial level and on reconsideration, Plaintiff appeared with counsel via telephone conference (due to COVID-19 restrictions) on February 28, 2023, for a hearing before an Administrative Law Judge ("ALJ"). AR at 110–150.

Plaintiff testified that his doctors told him to exercise and to wear compression stockings for his diabetes and heart disease. AR at 124. He wore compression stockings but lacked the energy to go to the gym. AR at 127. After he stopped working, he started "feeling some pressure in [his] chest" and had surgery for a stent to be placed in his heart. AR at 128. Plaintiff said that no "limitations [had] been put on [him] by [his] providers." AR at 128. He had shortness of breath with exertion, including walking. AR at 128–129. He would lie down for at least two hours during the day and would elevate his legs. AR at 129–130. He got swelling in his legs "here and there," a "couple times a week." AR at 131, 132.

---

[2] The page references from the transcripts are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

Vocational Expert ("VE") Robert Paterwic also testified and said that Plaintiff had transferrable skills from his past relevant work. AR at 137–138. His skills would transfer to jobs of assembler and electronic motor assembler, which required at least six hours of standing a day, but would allow for frequent postural changes from sitting to standing. AR at 142–146.

**III. The ALJ's Decision**

On April 4, 2023, the ALJ issued a decision finding that Plaintiff was not disabled, and therefore did not qualify for DIB. AR at 94–104.

At the outset, the ALJ found that Plaintiff met the insured status requirements for DIB[3] through December 31, 2025, and had not engaged in substantial gainful activity since the alleged onset date. AR at 96. Then, at step two of the Commissioner's "five-step, sequential evaluation process,"[4] the ALJ determined that

---

[3] Claimants must meet the insured status requirements of the Social Security Act to be eligible for DIB. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.130.

[4] In addition to the insured status requirements for DIB benefits, the Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); citing, *inter alia*, 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

Plaintiff had the following severe impairments: obesity, disorder of the spine, diabetes, coronary artery disease status post stent placement, soft tissue injury, and disorder of the muscle, ligament, and fascia. AR at 96.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR at 97.

Before proceeding to step four, the ALJ determined that Plaintiff had the residual functional capacity[5] ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that Plaintiff could never climb ladders, ropes, or scaffolds, and could only occasionally climb ramps and stairs. AR at 98. He required "the option to frequently shift between sitting and standing." AR at 98.

At step four of the sequential evaluation, the ALJ found that Plaintiff was not able to perform any of his past relevant work, but acquired transferable skills from his past relevant work. AR at 102. The ALJ determined that considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including an assembler and electronic motor assembler. AR at 102–103. Therefore, the ALJ found that Plaintiff was not disabled, and not entitled to DIB payments. AR at 103–104.

On April 19, 2024, the Appeals Council denied Plaintiff's request to review the ALJ's decision. AR at 1–7. The ALJ's decision thus became the "final decision" of the

[5] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545.

Commissioner. *See Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. § 404.981) ("[I]f the Appeals Council denies review, the ALJ's decision becomes the [Commissioner]'s final decision.").

## LEGAL STANDARD

Under 42 U.S.C. § 423(d), a claimant is disabled and entitled to DIB if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."

Where an individual's application for DIB has been denied, 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision. The fourth sentence of § 405(g) authorizes the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (discussing § 405(g)).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings

sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, the reviewing court must first determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (noting that the phrase "substantial evidence" is a term of art used in reviewing administrative agency decisions to signify evidence that amounts to "more than a mere scintilla"). Thus, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448. Yet, although "the evidentiary threshold for the substantial evidence standard is not high, . . . [it] is also not merely hortatory: [i]t requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (internal quotation marks omitted).

## DISCUSSION

Plaintiff raises three issues in his motion for judgment on the pleadings. First, he argues that the ALJ's decision was not based on substantial evidence because the

VE did not testify that the jobs identified existed in significant numbers with the limitations in the RFC. ECF No. 8 at 18–20. Second, Plaintiff argues that the ALJ failed to address the treating source opinion that Plaintiff should elevate his legs. ECF No. 8 at 20–21. Third, Plaintiff argues that the ALJ acted as her own medical expert because she did not have an opinion from after Plaintiff's heart surgery and did not adequately account for the swelling in his legs. ECF No. 8 at 21–25.

In response, the Commissioner argues that the ALJ's decision is supported by substantial evidence. ECF No. 12-1 at 9–11. The Commissioner contends that the opinion regarding elevating Plaintiff's legs was not a medical source statement, so the ALJ was not required to discuss it, and the ALJ adequately discussed Plaintiff's leg swelling. ECF No. 12-1 at 11–12. The Commissioner reads the VE's testimony differently than Plaintiff does and concludes that the VE testified that the numbers of jobs available encompassed all the limitations in the RFC. ECF No. 12-1 at 12–13.

The Court begins with Plaintiff's third argument because of its conclusion that remand is necessary on that issue.

**1. The ALJ needed a medical opinion to assess the limitations resulting from Plaintiff's heart disease.**

Plaintiff argues that the ALJ improperly interpreted Plaintiff's cardiac test results herself without the aid of a medical opinion, as the medical opinions were all rendered before Plaintiff's diagnosis and heart surgery. ECF No. 8 at 22. The Commissioner does not respond to this argument. The Court agrees with Plaintiff.

Where there are "'no obvious gaps in the administrative record'" and "'where the ALJ already possess[es] a complete medical history,'" a medical source opinion to

"interpret the raw medical data to assess Plaintiff's RFC" may not be necessary. *Robert W. v. Comm'r of Soc. Sec.*, No. 23-CV-688-FPG, 2026 WL 2858538, at *4 (W.D.N.Y. Sept. 23, 2026) (quoting *Clark v. Comm'r of Soc. Sec.*, No. 18-CV-0509, 2019 WL 3886723, at *6 (W.D.N.Y. Aug. 19, 2019)). Indeed, if an ALJ can reach "an informed decision based on substantial evidence without" an opinion from the claimant's treating physician, remand is not required. *Russ v. Comm'r of Soc. Sec.*, 582 F. Supp. 3d 151, 163 (S.D.N.Y. 2022).

Here, the ALJ could not have made an informed decision regarding Plaintiff's cardiology records without a medical opinion, so remand is required. The ALJ had an opinion from a non-examining medical consultant from November 2021, AR at 156, from another non-examining consultant from March 2022, AR at 171–173, and from a consultative examiner from October 2021, AR at 616–616. The three opinions were from before Plaintiff's heart disease was discovered in July 2022. *See* AR at 673, 677–682, 686–689. "The ALJ thus had no opinion from any medical source, treating or otherwise, as to the significance of the additional records or their implication for [Plaintiff's] functional abilities." *Russ*, 582 F. Supp. 3d at 164.

Additionally, the ALJ had no way to assess the functional limitations existing after Plaintiff's stent placement surgery. At step two, the ALJ found Plaintiff to have the severe impairment of "Coronary Artery Disease status post Stent Placement," AR at 96, meaning that the impairment significantly limited Plaintiff's ability to do basic work activities. *See* 20 C.F.R. § 404.1522 (defining non-severe impairments). Yet, again, none of the opinions were from after the surgery, which occurred in July 2022,

AR at 686–689, so they could not have considered whether Plaintiff had functional limitations as a result of the surgery or from his heart disease. Additionally, the stent was placed in Plaintiff's left circumflex artery, which was 95% blocked, but Plaintiff also had a 50% blockage in his left anterior descending artery and a 40% blockage in his "mid LAD." AR at 678. The records do not clarify whether the stent in one artery improved Plaintiff's functional abilities overall, if additional stents are needed to address the other blockages, and if Plaintiff's functioning is impaired due to the other blockages.

The ALJ was not equipped to interpret the cardiology medical records herself, without input from a medical professional. *Cf. Robert W.*, 2026 WL 2858538 at *4 ("the record was sufficient for the ALJ to assess Plaintiff's limitations after his second hip surgery without a specific medical source opinion"). Here, the ALJ stated that "during the vast majority of exams, the claimant had normal cardiac impairments and denied significant cardiac findings." AR at 101. Yet Plaintiff had objectively significant cardiac findings—his stress test, echocardiogram, and abnormal ECG revealed significantly blocked arteries in his heart that caused chest pain. AR at 673, 680–682. Assuming the ALJ meant that Plaintiff denied chest pain, the medical records reflect that while Plaintiff denied chest pain at appointments, he reported that he experienced chest pain while exerting himself. *See, e.g.*, AR at 671–672 ("Described his chest pain is more related to the activities, such as while walking, located in the mid chest pressure in nature, 8/10 . . . denies current chest pain"). Such reports were consistent with Plaintiff's testimony, AR at 128–129, and with the

objective findings during Plaintiff's stress test. AR at 682. Of note, Plaintiff did not have a repeat stress test after his stent surgery, so the records do not establish that Plaintiff's exertional limitations reflected during the stress test were alleviated after surgery. *See Russ*, 582 F. Supp. 3d at 165 ("The ALJ thus had ample reason to seek an informed medical opinion of the import of the records rather than improperly making that determination [her]self."). Without a medical opinion, the Court cannot find that the ALJ's decision was supported by substantial evidence.

Remand is required to obtain a medical opinion on the effect of Plaintiff's heart disease and stent placement on his functional capacity.

**2. On remand, the ALJ can seek clarification regarding the numbers of jobs that exist in the national economy.**

Plaintiff argues that the ALJ erred in finding that significant numbers of jobs exist that Plaintiff could perform because the VE's numbers were based on the number of total jobs, and not the number of jobs with the modification of a sit/stand option. ECF No. 8 at 18–20. The Commissioner responds that the VE testified that all of the jobs allow for a sit/stand option, so the numbers of jobs that exist in the national economy are the same with or without that additional limitation. ECF No.12-1 at 12–14.

At step five, the Commissioner has the burden to establish that work exists in "significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(1). "[W]hile it is true that the Commissioner bears the burden at step five, 'the ALJ, unlike a judge in a trial, must [her]self affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding.'" *Butts v. Barnhart*, 388 F.3d 377,

386 (2d Cir. 2004), *amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005) (*quoting Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)).

Here, the ALJ concluded that Plaintiff could perform jobs of assembler and electronic assembler, and that 35,000 assembler jobs exist nationally and 28,000 electronic motor assembler jobs exist. AR at 103. This finding was consistent with the VE's testimony about the numbers of those jobs that exist in the national economy. AR at 143–144.

Yet the VE's testimony is not clear as to whether those numbers should be reduced, and by how much, with the additional restriction of a sit/stand option. Both jobs are classified as light, but the VE testified that they allow for postural changes from sitting to standing. AR at 146–147. The ALJ asked for clarification on the numbers of jobs that exist in the economy with the sit/stand tolerance: "is that for all of those jobs that you've listed, or only a portion of them?" AR at 147. The VE responded, "No, for both of those jobs, the two jobs that we just stated." AR at 147. The VE appeared to be speaking about the job classifications, while the ALJ seemed to be asking about the number of jobs in the economy with the additional restriction.

While the VE's testimony seems to support the Commissioner's interpretation, because remand is warranted on a separate issue, the ALJ should seek clarification from the VE regarding the numbers that exist for each job with the sit/stand option.

**3. The ALJ did not consider the opinion to elevate legs, but the resulting error was harmless.**

Plaintiff argues that his primary care physician Riffat Sadiq, M.D. opined that he needed to elevate his legs as much as possible, and that the ALJ erred by failing

to mention that opinion. ECF No. 8 at 20–21. The Commissioner argues that the ALJ was not required to discuss the opinion because it was contained in a treatment note rather than in a medical source statement. ECF No. 12-1 at 11. The Commissioner further argues that, in any event, the ALJ adequately discussed Plaintiff's edema and that his physical examinations did not consistently reveal swelling. ECF No. 12-1 at 11–12.

Regulations effective for all claims filed after March 27, 2017 direct that the ALJ evaluate the "persuasiveness" of all opinions and prior administrative medical findings in the record by assessing multiple factors, including supportability, consistency, the length and nature of the relationship of the source with the claimant, the source's specialization, and "other factors" that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c). While the ALJ need not explain in her decision how she considered all of the factors, she must explain how she "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings . . . . " 20 C.F.R. § 404.1520c(b)(2).

An ALJ "commit[s] procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record." *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022). The error may be harmless, however, "if 'a searching review of the record assures us that the substance of the [regulation] was not traversed.'" *Id.* (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)).

Here, Plaintiff's primary care physician Dr. Sadiq examined Plaintiff on July

16, 2021. AR at 535–540. Plaintiff reported an open blister on his left shin not caused by an injury and dry patches on both feet, and was wearing compression stockings. AR at 535–536. On examination, he had 1+ edema in both legs and an "open blister site." AR at 537. Dr. Sadiq assessed Plaintiff with "lymphedema" and advised him to continue using compression stockings and "to elevate BLE [bilateral lower extremities] above heart level as much as possible when sitting." AR at 538.

The ALJ did not discuss Dr. Sadiq's recommendation. Nevertheless, both Plaintiff's counsel and Plaintiff discussed elevating his legs during the hearing. AR at 118–119, 126, 130. The ALJ noted Plaintiff's reported need to elevate his legs, AR at 98–100, and reasoned that "the exams that noted a normal gait and no significant swelling or edema did not support a finding of significant ambulatory or postural limitations, or the need to elevate his legs during the work day." AR at 100. The treatment records showed both swelling, *see, e.g.*, AR at 469–470, 476, 511, 544, 599, 604, 726, and no swelling, *see, e.g.*, AR at 521, 532, 657, 663, 710, in Plaintiff's legs at different appointments, so the ALJ's conclusion is supported by substantial evidence. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (The Second Circuit will "defer to the Commissioner's resolution of conflicting evidence.").

While the error would be harmless on its own, because the case is being remanded on another issue, the ALJ should expressly consider Dr. Sadiq's recommendation on remand.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings,

ECF No. 8, is GRANTED, and the Commissioner's cross-motion for judgment on the pleadings, ECF No. 12, is DENIED. The matter is REMANDED under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this decision.

SO ORDERED.

DATED: October 8, 2026
Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge